UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>FLANGAS MCMILLAN LAW GROUP, INC., *et al*.,<br><br>    Defendants. | Case No. 2:11-CV-188-KJD-RJJ<br><br>**ORDER** |

       Presently before the Court is Plaintiff's Motion for Partial Summary Judgment (#15). Defendant Flangas McMillan Law Group, Inc. ("FLMG" or "Defendant" or "Counter-claimant") filed an untimely response in opposition (#45). Also before the Court is Plaintiff's Motion to Dismiss Defendant/Counter-claimant Flangas McMillan Law Group, Inc.'s Counter-claims (#19). Again, Counter-claimant filed an untimely response in opposition (#46).

       Additionally before the Court is Defendant's Emergency Motion to Set Aside Order, or in the Alternative to Reconsider (#44). Plaintiff filed a response in opposition (#50/51/52) to which Defendant replied (#55). Having read and considered the motion to set aside or reconsider the Court's order, the Court finds good cause and grants the motion to set aside or reconsider. Consequently, the Court denies Plaintiff's Motion to Strike (#49) the late-filed oppositions (#45/46).

Finally, before the Court is Defendant Flangas McMillan Law Group, Inc.'s Motion to Dismiss or Stay (#36).  Plaintiff filed a response in opposition (#39).

I.  Background

Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") seeks a judicial determination that the professional liability insurance policy it issued to Defendant Flangas McMillan Law Group, Inc. does not afford coverage for the remaining claims in an action pending in the Eighth Judicial District Court for Clark County, Nevada, captioned <u>Rita A. Quam Family Trust, et. al.</u> v. <u>OPA Management, LLC</u>, Case No. A568829 ("the Underlying Action").  The Underlying Action remains with a single cause of action for legal malpractice brought by Oak Park Real Estate Equities, LLC ("Oak Park"), a business in which FMLG attorneys John McMillan and Gus Flangas have controlling ownership and management interests, against FMLG as alleged counsel for Oak Park.  Specifically, McMillan and Flangas own a 27% share in Oak Park through FM Real Estate Associates, LLC ("FM Real Estate").

The AGLIC policy specifically excludes coverage for any claim based upon or arising out of, in whole or part, the alleged acts and omissions by any insured for a business enterprise "in which any Insured has a 'Controlling Interest.'" AGLIC asserts that this means that coverage is excluded when any of the insured attorneys directly or indirectly owns 10% or more of the business claiming malpractice or when the attorney acts in the role as manager for the business.  Here, Flangas and McMillan formed FM Real Estate to invest in Oak Park.  AGLIC asserts that because Oak Park is 27% owned by insured attorneys and was managed by FM Real Estate's managing member, John McMillan–an insured attorney–this case is precisely the type of risk that is precluded by the business enterprise exclusion.

AGLIC issued a Lawyer's Professional Liability Insurance Policy ("the Policy") to FLMG for the policy period January 14, 2008 to January 14, 2009.  It is undisputed that FMLG is the named insured under the terms of the policy and that McMillan and Flangas are "Insureds" under the terms

2

of the policy. The Policy contains several exclusions in Section III, including the two at issue in this action:

> "This policy shall not apply to any **Claim** based upon or arising out of, in whole or in part:
>
> ...
>
> **D.** the **Insured's** capacity or status as:
>   1. an officer, director, partner, trustee, shareholder, manager or employee of a business enterprise, charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust;
>
> ...
>
> **E.** the alleged acts or omissions by any **Insured**, with or without compensation, for any business enterprise, whether for profit or not-for profit, in which any **Insured** has a **Controlling Interest**[.]"

The exclusion contained in paragraph E., quoted above, is typically referred to as the business enterprise exclusion. Plaintiff has now moved for partial summary judgment on its claims for declaratory relief seeking a declaration that the business enterprise exclusion applies to preclude coverage for Oak Park's remaining claim for legal malpractice against FMLG in the Underlying Action.

II. Defendant's Motion to Stay/Abstain

Defendant also argues that the Court should abstain from exercising jurisdiction over this action and either dismiss or stay the case until the Underlying Action is resolved, because the issues involved in the present litigation overlap with the Underlying Action. The Declaratory Judgment Act ("DJA") provides in pertinent part, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). A federal court has substantial discretion when deciding whether to exercise jurisdiction over a declaratory action pursuant to the DJA. See, e.g., Wilton v. Seven Falls Co., 515 U.S. 277, 282-283, 115 S.Ct. 2137, 2140 (1995); Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494-95, 62 S.Ct. 1173, 1175 (1942); Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d

3

800, 802 (9th Cir. 2002). This discretion, however, is not limitless. See Huth, 298 F.3d at 803. The district court cannot be arbitrary or use personal whim when deciding whether to grant or deny jurisdiction over the declaratory action. See id.

The primary factors district courts consider when exercising discretion under the DJA were laid out by the Supreme Court in Brillhart. See id. The district court should 1) avoid needless determinations of state law; 2) discourage the filing of declaratory actions as a means of forum shopping; and 3) avoid duplicative litigation. See id. These factors are not necessarily exhaustive. Id. The Ninth Circuit also suggests other factors for district courts to consider.[1] However, the Brillhart and Dizol factors do not suggest that abstention is appropriate in this action. Furthermore, the existence of the counterclaims which were independent of the declaratory relief action invoke the obligation of the Court to hear the claims. See Maryland Cas. Co. v. Knight, 96 F.3d 1284, 1289 n.6 (9th Cir. 1996). Therefore, the Court denies the motion to abstain or stay.

III.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere

---

[1] The suggested factors are: 1) whether the declaratory action will settle all aspects of the dispute; 2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory action is being brought solely for procedural fencing or a res judicata advantage; 4) whether the declaratory action will result in entanglement between federal and state court systems; and 5) the convenience of the parties and the availability and convenience of other remedies. See Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (quoting Am. States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir. 1994) (Garth, J., concurring)).

allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

IV.  Analysis

    A. Motion for Partial Summary Judgement

In determining the meaning of an insurance policy, the terms should be understood in their plain, ordinary and popular sense. See Nat'l Union Fire Ins. Co. of State of Pa., Inc. v. Reno's Executive Air, Inc., 682 P.2d 1380, 1382 (Nev. 1984); Home Indemnity Co. v. Desert Palace, Inc., 468 P.2d 19, 21 (1970).  In particular, an insurer wishing to restrict the coverage of a policy should employ language which clearly and distinctly communicates to the insured the nature of the limitation.  See Harvey's Wagon Wheel v. MacSween, 606 P.2d 1095, 1098 (1980).

Furthermore, although an individual clause standing alone might appear to contain no ambiguity, the policy must be read as a whole in order to give a reasonable and harmonious meaning

5

and effect to all its provisions. See Reno's Executive Air, 682 P.2d at 1383. A court must look to the entire contract of insurance for a true understanding of what risks are assumed by the insurer and what risks are excluded. See id. If the insurance policy were ambiguous, the Court would be required to interpret the contract narrowly against the insurer. See McDaniel v. Sierra Health and Life Ins. Co., Inc., 53 P.3d 904, 906 (Nev. 2002).

In the instant action, Plaintiff asserts that the business enterprise exclusion precludes coverage for FMLG, because two other insureds, Flangas and McMillan, have controlling interests in Oak Park.[2] In this action, the Policy clearly and distinctly limits the insurers' liability for the "alleged acts or omissions by any **Insured**" on behalf of "any business enterprise" when "any **Insured**" has "a **Controlling Interest**" in that business enterprise.

Despite Defendant's untimely and convoluted argument that the exclusion is vague, the facts demonstrate otherwise. Here, it is clear that the exclusion is not ambiguous for several reasons. Generally, the majority rule broadly interprets the term "any insured" under an exclusion clause to negate coverage for all insureds, even innocent co-insureds, despite the inclusion of a severability clause that provides that liability coverage applies separately to each insured. West Am. Ins. Co. v. AV & S, 145 F.3d 1224, 1227-28 (10th Cir. 1998)(collecting cases); California Cas. Ins. Co. v. Northland Ins. Co., 56 Cal. Rptr.2d 434, 442 (Cal. Ct. App. 1996). In the present Policy, no separation or severability cause exists. This absence makes it more likely that the intent of the phrase "any insured" is to be applied as read, rather than to provide coverage for some insureds, but not others.

Furthermore, the Policy, in Section V., D., provides separate protection for innocent insureds that would otherwise be excluded from coverage by Section III – Exclusions, subsection A. This safe harbor provided for innocent insureds is more clear and distinct evidence that the Policy is intended to

---

[2] The fact that Flangas and McMillan's controlling interest derives from their real estate partnership, FM Real Estate Associates, LLC, does not change the analysis. Both Flangas and McMillan are listed as managing members of FM Real Estate. The documents do not disclose if Flangas and McMillan are the only members of FM Real Estate, but Defendants have not raised any genuine issues of fact that raise questions about Plaintiff's assertion that Flangas and McMillan, insureds. have an ownership right, individually, in at least 10% of Oak Park, through FM Real Estate.

exclude from coverage any claim resulting from acts on or behalf of a business enterprise in which any insured has a controlling interest. Insurers have many credible reasons not to assume the kind of risk excluded here. First, insurers need "to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto the malpractice carrier[.]" Am. Guarantee & Liability Ins. Co. v. Kieter, 360 F.3d 13, 17 (1st Cir. 2004). Second, the exclusion seeks to avoid circumstances where an insured intermingles its business relationships with its law practice such that an insurance carrier incurs additional risk of having to cover the insured for legal malpractice claims relating to the conduct of business, rather than out of professional practice. See id.

It is clear and distinct from the plain language of the Policy that coverage would be excluded for any insured for claims relating to a business enterprise in which any insured held a controlling interest. The Court will not rewrite the contract provisions that are unambiguous or increase the obligation from the insurer "to the insured where such was intentionally and unambiguously limited by the parties." United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1156-57 (Nev. 2004).

Defendant FMLG also argues that waiver or estoppel prevent the Court from granting summary judgment. A party waives a legal right when it intentionally relinquishes a known right. Prime Ins. Syndicate, Inc. v. Damasco, 471 F. Supp.2d 1087, 1089 (D. Nev. 2007)(citing Santino v. Great Am. Ins. Co., 9 P.2d 1000, 1004 (1932)). Waiver may be implied from conduct which evidences an intention to waive a right, or by conduct inconsistent with any other intention than to waive a right. See McKellar v. McKellar, 871 P.2d 296, 297 (Nev. 1994).

Defendant cites Allied Mut. Ins. Co. v. Hingst, 360 F. Supp. 1204, 1209 (Dist. N.D. 1973) for the proposition that AGLIC is prevented from asserting its ground for exclusion in the present action for declaratory relief. However, Hingst draws the opposite conclusion: the insurer may discontinue its defense and file an action for declaratory relief after it has reserved its rights and proceeded to defend the insured, but later concludes that there is no coverage. See id. Despite Defendant's argument that AGLIC has assumed and conducted a defense of FMLG with knowledge of a coverage defense and without disclaiming liability and giving notice of its reservation of rights to withdraw counsel and file

an action for declaratory relief, the evidence relied upon by Defendants demonstrates otherwise. The coverage letter sent by AGLIC clearly outlines potential coverage issues, cites specific exclusions in the Policy, and clearly sets forth AGLIC's right to withdraw its defense and indemnity obligations.[3]

Defendants assertion that AGLIC has engaged in misconduct such as "sandbagging" and failing to investigate the claim are also belied by the record. Unlike the case Defendant relies on, Vitale v. Jefferson Ins. Co. of New York, 5 P.3d 1054, 1059 (Nev. 2000), the letter asserting AGLIC's reservation of rights cited the exclusions relied upon to deny coverage. In Vitale, the original coverage letter failed to define a particular term in an exclusion the insurer relied on to deny coverage, but the court still found that the insurer had not waived the right to exercise the exclusion. Id. In the present action, the reservation of rights letter identified, amongst other provisions, the exclusion that AGLIC eventually relied upon to deny coverage. There was no intentional or unintentional misrepresentation as to potential coverage issues in the letter. Though AGLIC may have not relied upon some of the issues it initially identified in order to deny coverage, the exclusion it did rely upon was clearly identified in the letter. Therefore, Defendant's assertions of sandbagging, which is misleading an insured with the belated announcement of a new ground for denial of coverage, is not borne out by the evidence upon which Defendant FMLG relies. See Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1561 (9th Cir. 1991)(defining sandbagging).

Finally, FMLG's claims of severe prejudice and estoppel must be dismissed for similar reasons. First, AGLIC's coverage positions were clearly communicated to FMLG. Any delay in asserting the final position can be clearly traced to the second amended complaint in the Underlying Action which was filed in state court on March 17, 2010. The state court then ruled on motions to dismiss on August 13, 2010, leaving the claims by Oak Park against FMLG the only remaining claims. Plaintiff then filed the present action for declaratory relief on February 3, 2011. Though FMLG claims that Plaintiff purposely did this on the eve of trial, the trial has since been continued multiple times.

---

[3] The letter specifically cites the exclusions that AGLIC relies on in the present motion.

Therefore, the Court can find no severe prejudice resulting to FMLG.  Since the Court has found that coverage is excluded by the business enterprise exclusion and that waiver and estoppel do not prevent the Court from granting summary judgment, the Court grants Plaintiff's motion for partial summary judgment.

Furthermore, since the Court has concluded that no coverage exists for the claims in the Underlying Action, Plaintiff does not have a duty to defend and indemnify FMLG.  Therefore, the Court grants Plaintiff's motion for summary judgment on Defendant's counterclaims.

V.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Emergency Motion to Set Aside Order, or in the Alternative to Reconsider (#44) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (#49) is **DENIED**;

IT IS FURTHER ORDERED that is Defendant Flangas McMillan Law Group, Inc.'s Motion to Dismiss or Stay (#36) is **DENIED**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (#15) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff's Motion to Dismiss Defendant/Counter-claimant Flangas McMillan Law Group, Inc.'s Counter-claims (#19) is **GRANTED**.

DATED this 24th day of February 2012.

_____
Kent J. Dawson
United States District Judge